# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| MARY E. LISENBY, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> JOHN WILLIAMS, ) <br> ) <br> Defendants. ) <br> ) | Civil Action Number <br> 2:17-cv-00054-AKK-WC |

## MEMORANDUM OPINION AND ORDER

Mary Lisenby originally filed this action pursuant to Title VII of the Civil Rights Act of 1964, 78 stat. 253, as amended, 42 U.S.C. § 2000e *et seq*., against the Lowndes County Sheriff's Department, the Lowndes County Commission, the Lowndes County Sheriff, John Williams, and several other employees of the Lowndes County Sheriff's Department. Lisenby, who is Caucasian, alleges that the Department was a hostile working environment tainted by pervasive racial and sex harassment, that she was discriminated against because of her race, and that Sheriff Williams retaliated against her by discharging her when she complained about her treatment. The court has already granted two previously filed motions to dismiss, docs. 13 and 15, and only Lisenby's hostile work environment and racial/gender harassment claim, count one, and her discrimination claim, count

two, against Sheriff Williams are before the court. Doc. 23 at 7. Sheriff Williams has now filed a motion for summary judgment arguing that Lisenby has failed to establish the requisite severe or pervasive harassment necessary to prevail on a hostile environment claim. Doc. 29. That motion is now fully briefed, *see* docs. 30; 33; and 34, and ripe for review.[1] After carefully considering the parties' briefs and the record, the court concludes that questions of material fact preclude it from granting summary judgment. Accordingly, Sheriff Williams' motion, doc. 29, is due to be denied.

## II. STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "a party opposing a properly supported motion for summary judgment . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 256. However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Id.* at 255. It is explicitly not the role of the court

---

[1] In his motion Sheriff Williams does not directly address Lisenby's claim for discriminatory discharge. However, Sheriff Williams does refer to this claim obliquely while challenging Lisenby's hostile environment claim. The court construes these references as addressing the discriminatory discharge claim, and accordingly will discuss them specifically in that context.

"to weigh conflicting evidence or to make credibility determinations." *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996); *see also Anderson*, 477 U.S. at 255 (explaining that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge").

"[M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Nor will "a . . . 'scintilla of evidence in support of the nonmoving party . . . suffice to overcome a motion for summary judgment.'" *Melton v. Abston*, 841 F.3d 1207, 1219 (11th Cir. 2016) (quoting *Young v. City of Palm Bay*, 358 F.3d 859, 860 (11th Cir. 2004)). Instead, if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial," and summary judgment is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation omitted).

### III. FACTS

Sheriff Williams hired Lisenby in June 2015 as a deputy sheriff in the Lowndes County Sheriff's Department. Docs. 30-1 at 2; 33-1 at 6. During her term of employment, Lisenby was the only white female officer in the Department.

Doc. 33-1 at 7–8.[2]  Department employees, including Lisenby and her fellow officers, were directed to refrain from "divisive criticism of . . . supervisory personnel" and were prohibited from engaging in insubordinate behavior.  Doc. 30-3 at 4, 7, 11–12.  Sheriff Williams managed the Department closely by specifically assigning particular tasks to each officer and expecting officers to exclusively focus on those duties.  Doc. 30-2 at 3.  As relevant here, Sheriff Williams relegated traffic control responsibilities only to the officers issued Uniform Traffic Ticket and Complaint books.  *Id.*  All other officers were expected to focus on their assigned tasks and to issue only verbal warnings if they noticed traffic violations, absent some basis for effectuating an arrest.  *Id.* at 3–4.

Over the course of Lisenby's employment, Sheriff Williams repeatedly singled out and insulted her, particularly when she conducted traffic stops.  *See* Doc. 33-1 at 18, 20, 26, 31.  Among other things, Sheriff Williams commented on Lisenby's breasts while discussing bulletproof vests with her, *id.* at 23, called her "a stupid bitch" on several occasions, *id.* at 18, 31, commented to other officers that dealing with Lisenby was like dealing with a "fucking five year old," *id.* at 18, called her a "typical white female [who] can't do a damn thing right," *id.* at 19, and, when Lisenby had trouble understanding him on the radio, commented that he just did not "know what it is about you females."  *Id.*  When Lisenby asked Sheriff

---

[2] The Department was primarily made up of African-American men, but also employed white male and African-American female officers.  Doc. 33-1 at 7–8.

4

Williams to stop speaking to her in such a derogatory manner, he told her to resign if she could not tolerate his behavior. *Id.* at 18. Sheriff Williams also purportedly locked Lisenby out of a meeting for several minutes because "her dumb ass was late." *Id.* This pattern of harassment allegedly became so severe that Lisenby avoided the Sheriff's Office and the county jail to reduce her interactions with Sheriff Williams. *Id.* at 26, 31, 33.[3]

Lisenby's issues with Sheriff Williams apparently reached a tipping point on August 5, 2016. *Id.* at 10. That day, Lisenby, who was not assigned to traffic duty at the time, *id.* at 11, pulled a motorist over for running a stop sign and nearly colliding with Lisenby's vehicle. *Id.* at 10.[4] The motorist was irate about the stop and aggressively confronted Lisenby. *Id.* The motorist then proceeded to call Sheriff Williams during the stop and to complain directly to him regarding Lisenby's conduct. *Id.* at 11. Using the motorist's phone, Sheriff Williams instructed Lisenby to release the motorist without writing a ticket even after Lisenby purportedly explained that the motorist was impaired. *Id.* at 11–13. During the call, Sheriff Williams berated Lisenby for pulling the motorist over and called her "a stupid bitch," among other things. Doc. 33-1 at 13, 31. Although Lisenby felt that her life was in danger when the motorist confronted her, she

---

[3] While Sheriff Williams obviously does not believe that he discriminated against Lisenby, he admits that it was his practice to speak harshly to employees when he felt it was warranted. Doc. 30 at 9–10.
[4] Lisenby asserts that the motorist was visibly intoxicated, but this fact is disputed. *See* Docs. 33-1 at 12–14; 30-2 at 4. In any event, this fact has little bearing on Lisenby's claims.

complied with Sheriff Williams' instructions. *Id.* at 13–15. An official investigation was subsequently initiated into the incident and Lisenby was terminated a few days later, allegedly without proper notice of the disciplinary proceedings or an opportunity for an exit interview. *Id.* at 15–17, 30; Doc. 30-6 at 2–4.

**IV. DISCUSSION**

Lisenby's complaint pleads two counts—a hostile environment claim she titles "racial/gender harassment and hostile environment," count one, and a discriminatory discharge claim she titles "Title VII," count two. The court will address both counts in turn, beginning with the hostile environment claim.

### A. *Count I—Hostile Work Environment*

In order to prevail on a hostile environment claim brought under Title VII, Lisenby must show that:

> (1) [she] belonged to a protected group, (2) [she] was subjected to unwelcome harassment, (3) the harassment was based on a protected characteristic, (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of [her] employment and create an abusive working environment, and (5) a basis exists for holding the employer liable.

*Trask v. Sec'y, Dep't of Veterans Affairs*, 822 F.3d 1179, 1195 (11th Cir. 2016).

Title VII clearly provides at least some protection against gender based harassment in the workplace, but the Supreme Court has cautioned that it ought not

be construed as a "federal 'civility code.'" *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)). Indeed, "not all workplace conduct that may be described as 'harassment' affects a term, condition, or privilege of employment within the meaning of Title VII." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) (quotation omitted). Thus, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citation and internal quotation marks omitted). Instead, discriminatory harassment must be "sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Meritor*, 477 U.S. at 67 (quoting *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir. 1982)). Moreover, "'not all objectionable conduct or language amounts to discrimination under Title VII.'" *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1297 (11th Cir. 2012) (quoting *Reeves v. C. H. Robinson Worldwide, Inc.*, 594 F.3d 798, 809 (11th Cir. 2010)). "[O]nly conduct that is 'based on' a protected category . . . may be considered in a hostile work environment analysis." *Id.* In other words, statements "that do not relate to the [race or gender] of the actor or of the offended party (the plaintiff), are not counted." *Id.* (quotation omitted).

7

The inquiry into whether sex or race based harassment has risen to the level required to alter the terms and conditions of employment includes both a subjective and an objective component. *Mendoza*, 195 F.3d at 1246. Thus, the victim of harassment must "subjectively perceive the environment to be abusive" and the work environment must also be one that "a reasonable person would find hostile or abusive." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). This inquiry is conducted in light of the totality of the circumstances and encompasses a variety of considerations including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23.

Sheriff Williams primarily argues that Lisenby has failed to establish that the alleged harassment she experienced objectively rises to the level of severity required for liability under Title VII. In other words, Sheriff Williams contends that Lisenby has failed to demonstrate, in light of the totality of the circumstances, that her working environment was so abusive as to alter the terms and conditions of her employment. The court disagrees.

As articulated above, Lisenby endured what she characterizes as a constant stream of derogatory and demeaning comments from Sheriff Williams. On the day of her hire, Sheriff Williams commented that he was happy to hire a white female

8

for diversity purposes. Doc. 33-1 at 23. Shortly after Lisenby began work, Sheriff Williams commented on her breasts, *id.*, and, among other specific alleged acts, he twice referred to Lisenby as a "stupid bitch" as well as a "typical white female [who] can't do a damn thing right." *Id.* at 18–19, 31. When Lisenby asked him to stop this behavior, he purportedly told her that she should resign if she did not like his comments. *Id.* at 18. Moreover, Lisenby added, albeit without specifics, that Sheriff Williams constantly demeaned and criticized her so relentlessly that she attempted to avoid interacting with him whenever possible. *Id.* at 26, 31, 33. In light of the factors delineated by the Supreme Court in *Harris*, the court finds that this evidence is sufficient to establish a genuine issue of material fact regarding the existence of a hostile working environment.

Turning to the first factor, the harassment Lisenby allegedly endured was frequent. Lisenby indicated Sheriff Williams began harassing her based on her race and sex, from the moment she joined the Department explaining that he hired her to show he was "diversified." *Id.* at 23. Indeed, this pattern of harassment purportedly never abated, as Lisenby testified that Sheriff Williams always spoke to her in an insulting manner and "constantly" harassed and demeaned her. *Id.* at 20, 26, 31. While Lisenby only specifically recounted seven discrete incidents of harassment based on her race or sex, she need not catalogue every incident of racial or gender harassment that occurred during her year long stint with the

9

Department to survive summary judgment on this record. *See Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002) (noting that there is "not simply some 'magic number' of racial or [gender based] insults" necessary to establish a hostile work environment). Instead, her testimony that she experienced near constant harassment based on her race and sex, a contention not specifically challenged by Sheriff Williams, in combination with the specific incidents of harassment she recounted in her deposition, establishes the existence of more than sporadic or isolated incidents of harassment. *See McCann v. Tillman*, 526 F.3d 1370, 1378–79 (11th Cir. 2008) (finding that three incidents of using racially derogatory language over more than two years was too "sporadic and isolated" to establish a hostile work environment).

With respect to the second *Harris* factor, although not physically threatening, the alleged harassment was severe. Among other things, Sheriff Williams commented on Lisenby's breasts, doc. 33-1 at 23, he twice called her "a stupid bitch," *id.* at 18, 31, he referred to her as a "typical white female [who] can't do a damn thing right," *id.* at 19, and he humiliated her in front of her almost uniformly male coworkers by, among other things, referring to her as a "fucking five year old," and forcing her to remain outside a meeting as punishment for being several minutes late. *Id.* at 18. Lisenby's testimony indicates she endured more than the "mere utterance of an . . . epithet," *Harris*, 510 U.S. at 21 (quotation

omitted), or the "occasional off-color comment," *Miller*, 277 F.3d at 1277. Instead, the evidence reveals a workplace "permeated with 'discriminatory intimidation, ridicule, and insult,'" *Harris*, 510 U.S. at 21 (quoting *Meritor*, 477 U.S. at 65), so severe that Lisenby actually avoided the Sheriff's Office in order to prevent further humiliation. The evidence suggests also that Sheriff Williams used demeaning language toward Lisenby when he was angry or was otherwise "taunting [her]," and often made such comments while reprimanding her in front of her male colleagues, demonstrating that the harassment was "humiliating and degrading." *See Miller*, 277 F.3d at 1277. When Lisenby objected to her treatment, Sheriff Williams told her "there's the gate" if she did not like his behavior, doc. 33-1 at 18, and there is no indication that his conduct ever changed despite Lisenby's objections. *See Shanoff v. Ill. Dep't of Human Servs.*, 258 F.3d 696, 704 (7th Cir. 2001) (explaining that it is "repeated incidents of verbal harassment that continue despite the employee's objections [that] are indicative of a hostile environment").

Finally, with respect to the final *Harris* factor, the alleged behavior interfered with Lisenby's job performance. Indeed, Lisenby need only show that "the harassment so altered working conditions as to 'ma[k]e it more difficult to do the job.'" *Harris*, 510 U.S. at 25 (Ginsburg, J., concurring) (quoting *Davis v. Monsanto Chem. Co.*, 858 F.2d 345, 349 (6th Cir. 1988)). In that respect,

Lisenby's assertions that Sheriff Williams constantly interfered with her while she was conducting traffic stops and that he often criticized her over the radio while she was on patrol, doc. 33-1 at 18, 20, 26, 31, along with her repeated attempts to reduce her levels of contact with Sheriff Williams by avoiding the Sheriff's Office, more than suffice. *Id.* at 26, 31, 33.

At this stage of the case, where the court must draw all reasonable inferences in Lisenby's favor, *see Anderson*, 477 U.S. at 255, her testimony is sufficient to demonstrate that Sheriff Williams' purported behavior altered the conditions of her employment beyond simply upsetting her.[5] At the least, in light of the totality of the circumstances, the court finds that Lisenby has created a genuine issue of material fact with respect to whether a reasonable person would find her working

---

[5] Sheriff Williams primarily argues that Lisenby has provided no evidence that he treated other employees more favorably in the workplace. Presumably, Sheriff Williams is contending that because he subjected all employees to the same allegedly abusive conduct, he did not discriminate against Lisenby. However, this argument has little bearing on Lisenby's hostile work environment claim. In contrast to a disparate treatment claim of gender discrimination based on a tangible adverse action, which generally requires a showing that an employee "was subjected to an adverse employment action in contrast with similarly situated employees outside the protected class," Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1087 (11th Cir. 2004), a hostile environment claim looks only to whether the employee was subjected to harassment based on a protected characteristic that was sufficiently severe or pervasive to constitute a change in "the terms and conditions of employment." *Reeves*, 594 F.3d at 807–08. As discussed above, Lisenby has carried her burden in this regard, and it is of no moment, at least with respect to her hostile environment claim, that she has not pointed to other similarly situated employees who were treated more favorably.

environment "hostile or abusive," *Harris*, 510 U.S. at 21, and Sheriff Williams' motion is due to be denied as to count one.[6]

## B. Count II—Lisenby's Discriminatory Discharge Claim

Sheriff Williams argues that Lisenby has failed to establish that the decision to discharge her was motivated by discriminatory animus. To support this contention, Sheriff Williams relies on Lisenby's failure to identify any comparators who received more favorable treatment after engaging in similar activity. Sheriff Williams also points out that Lisenby has failed to rebut his legitimate reason for her discharge, i.e., that she did not comply with department guidelines and was insubordinate during a traffic stop.

Where, as here, the plaintiff presents only circumstantial evidence of discrimination, courts generally apply the familiar burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, the plaintiff establishes a prima facie case of discrimination by

---

[6] In light of this finding, the court need not reach Sheriff Williams' contention that the court should not consider Lisenby's discharge as part of her hostile environment claim. As explained, even without considering Lisenby's discharge, she has established a genuine issue of material fact regarding the existence of an objectively hostile working environment. Thus, Lisenby's discharge has no bearing on the court's decision to deny Sheriff Williams' motion for summary judgment. In any event, the court agrees with Sheriff Williams' position that Eleventh Circuit precedent forecloses the court's consideration of the alleged discriminatory discharge as part of Lisenby's hostile environment claim because "discrete [discriminatory] acts . . . must be challenged as separate statutory discrimination . . . claims . . . [and] cannot be brought under a hostile work environment claim that centers on discriminatory intimidation, ridicule, and insult." *McCann*, 526 F.3d at 1379 (quotations omitted); *Singleton v. Auburn Univ. Montgomery*, 520 F. App'x 844, 848 n.5 (11th Cir. 2013) (same); *Freeman v. City of Riverdale*, 330 F. App'x 863, 866 (11th Cir. 2009) (same). Consequently, the court has not included this adverse employment action as part of its analysis of Lisenby's hostile work environment claim.

showing that "(1) she is a member of a protected class; (2) she was subjected to adverse employment action; (3) her employer treated similarly-situated . . . employees [outside of her class] more favorably; and (4) [she] was qualified to do the job." *McCann*, 526 F.3d at 1373. If these elements are satisfied, a presumption of discrimination is created which the defendant must rebut via the provision of a "legitimate, nondiscriminatory reason for [taking the challenged] action." *Id.* Finally, the plaintiff bears the ultimate burden of showing that the defendant's proffered reason is a mere "pretext for unlawful discrimination." *Id.*

To establish the existence of similarly-situated employees, among other things, the court evaluates "'whether the employees [were] involved in or accused of the same or similar conduct and [were] disciplined in different ways.'" *Burke-Fowler v. Orange Cty., Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006) (quoting *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999)). In conducting this analysis, "'the quantity and quality of the comparator's misconduct [must] be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges.'" *Id.* (quoting *Maniccia*, 171 F.3d at 1368). However, neither the lack of a comparator nor the failure to satisfy the requirements of *McDonnell Douglas* is necessarily fatal to the plaintiff's case. *See Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) (explaining that "establishing the elements of the *McDonnell Douglas* framework is not, and

never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case"). Instead, so long as the plaintiff "presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent" she will "always survive summary judgment." *Id.* In this context, "[a] triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents 'a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.'" *Id.* (quoting *Silverman v. Bd. of Educ. of City of Chi.*, 637 F.3d 729, 734 (7th Cir. 2011)).

Here, Sheriff Williams correctly argues that Lisenby has failed to produce evidence of any similarly situated employees who violated the same policies she purportedly did whom the Sheriff treated more favorably. While Lisenby identifies numerous incidents of misconduct that she feels were more egregious than her own behavior, doc. 33-1 at 20–25, "the relevant inquiry is whether the employer subjected differently ranked employees to the same or different employment policies." *Smith*, 644 F.3d at 1326. These purported incidents all involved different employment policies, and therefore Sheriff Williams is correct that Lisenby cannot carry her burden of establishing a prima facie case of discrimination through the usual method of showing similarly situated

comparators, outside of her protected class, who were treated more favorably after engaging in nearly identical conduct.

However, the court's inquiry does not end there. Instead, as articulated by the Eleventh Circuit in *Smith*, the *McDonnell Douglas* framework is merely a heuristic to guide the court's analysis of disparate treatment cases and to aid in determining whether the plaintiff has satisfied the core requirement of such cases—establishing that the employer took an adverse employment action with discriminatory intent. *See Smith*, 644 F.3d at 1327–28. In that respect, "so long as the circumstantial evidence raises a reasonable inference that the employer discriminated against the plaintiff, summary judgment is improper" without the need "to rely on the *McDonnell Douglas* presumption." *Id.* at 1328.

Viewing the evidence in the light most favorable to Lisenby demonstrates the existence of the requisite "convincing mosaic of circumstantial evidence" and creates a reasonable inference of intentional discrimination on the part of Sheriff Williams. Lisenby's hostile work environment claim turns exclusively on the behavior and comments of Sheriff Williams, the individual who ultimately made the decision to discharge her. As the court has already pointed out, Lisenby testified that Sheriff Williams subjected her to a stream of profane and inappropriate comments based on her race and sex. These comments occurred in private and in front of Lisenby's overwhelmingly male colleagues. Indeed,

Lisenby testified that she intentionally avoided Sheriff Williams based on his habit of constantly belittling and criticizing her and his repeated references to her sex and race. Doc. 33-1 at 26, 31, 33. Although Sheriff Williams did not directly reference Lisenby's status as a member of a protected class when discharging her, doc. 30-6 at 2–4, he did refer to her as a "stupid bitch" during the traffic stop precipitating her discharge. Doc. 33-1 at 31. In short, the hostile environment Sheriff Williams allegedly created also suffices to raise "a reasonable inference that [he] discriminated against [Lisenby]" on the basis of her race and sex when he discharged her. *Smith*, 644 F.3d at 1328. Therefore, because the litany of circumstantial evidence Lisenby presents uniformly suggests that Sheriff Williams possessed discriminatory animus, a supposition further supported by the circumstances of her discharge, e.g., the lack of notice Lisenby purportedly received of the ongoing disciplinary proceedings against her, doc. 33-1 at 15–17, 30, the court finds that, under *Smith's* convincing mosaic standard, summary judgment on Lisenby's claim for discriminatory discharge is precluded by genuine issues of material fact.[7]

---

[7] The court recognizes that Lisenby has not expressly rebutted Sheriff Williams' proffered, legitimate explanation for her discharge. However, as explained, so long as circumstantial evidence reasonably supports the existence of an inference of discrimination on the part of the employer, summary judgment is improper. *Smith*, 644 F.3d at 1328. Here, Lisenby has implicitly rebutted Sheriff Williams' proffered rationale for her discharge by presenting enough evidence "to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision" and accordingly infer that

17

## V. CONCLUSION AND ORDER

For the foregoing reasons, Sheriff Williams' motion for summary judgment, doc. 29, is **DENIED**. This case is **SET** for a Pretrial Conference at 9:30 a.m. on April 5, 2018 at the Federal Courthouse in Montgomery, Alabama, and for a jury trial on May 7, 2018 at 9:00 a.m. The court is not opposed, however, to a joint motion to continue this proceeding until September or October 2018.

**DONE** the 27th day of March, 2018.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE

---

unlawful discrimination was the real reason for the adverse action. *Chapman v. AI Transp.*, 229 F.3d 1012, 1024–25 (11th Cir. 2000) (quotation omitted).